**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| Brian Bogle,<br>Plaintiff,<br>vs.<br>General Motors LLC,<br>Defendant. | **CASE NO.: __________________**<br><br>**COMPLAINT** |

For this Complaint, the Plaintiff Brian Bogle, by undersigned counsel, states as follows:

**PRELIMINARY STATEMENT**

1. This is a 'lemon law' action by the purchaser of a new 2025 Chevrolet Silverado 1500 Custom Trail Boss vehicle manufactured and sold by the Defendant General Motors LLC. Plaintiff seeks damages related to his vehicle's defects and Defendant's failure to honor the terms of its warranty.

2. The Plaintiff would not have purchased the subject vehicle had he been made aware of the subject vehicle's defects.

**JURISDICTION AND VENUE**

3. This Court has jurisdiction over this matter pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2310(d)(1)(B), in that Plaintiff claims more than $50,000.00 in damages, exclusive of interest and costs.

4. This Court also has jurisdiction over this matter under the doctrine of supplemental jurisdiction as set forth in 28 U.S.C. § 1367.

5. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b)(1) as Defendant is subject to personal jurisdiction in this District and where Defendant, as principal,

directs and controls warranty repairs on covered vehicles through its agents consisting of a dealership network located in this District.

6. Further, venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the events giving rise to the Plaintiff's claims occurred within this District.

## PARTIES

7. Plaintiff Brian Bogle was, at all relevant times, an adult individual who resides in Rio Rancho, New Mexico, and who purchased the subject vehicle in Albuquerque, New Mexico, which was manufactured or sold by Defendant.

8. Defendant General Motors LLC ("GM") is organized under the laws of Delaware with its principal place of business located at 1240 Woodward Avenue, Detroit, Michigan 48226. At all relevant times, GM was engaged in the business of importing, assembling, marketing, distributing, and warranting GM automobiles in the State of New Mexico and throughout the United States.

## FACTUAL ALLEGATIONS

9. On May 10, 2025, Plaintiff purchased a new 2025 Chevrolet Silverado 1500 Custom Trail Boss equipped with the 3.0-liter Duramax turbocharged diesel inline-six engine, Vehicle Identification Number 3GCUKCE80SG314161 (hereafter the "Vehicle") from Reliable Chevrolet (NM), LLC, an authorized GM dealership in Albuquerque, New Mexico (hereinafter "Reliable Chevrolet"), for personal use.

10. The purchase price of the Vehicle was $59,294.00, excluding options, fees, taxes, and finance charges.

11. Prior to purchasing the Vehicle, Plaintiff relied upon Defendant's representations regarding Defendant's New Vehicle Limited Warranty that accompanied the sale of the Vehicle,

including the representation that Defendant would repair the Vehicle; these representations were material to Plaintiff's decision to purchase the Vehicle.

12. Specifically, under its New Vehicle Limited Warranty, Defendant promised to repair or replace components found to be defective in material or workmanship during the 3-year / 36,000-mile period following such vehicle delivery to consumer. Additionally, Defendant promised to repair or replace the powertrain components, including the Vehicle's engine, found to be defective in material or workmanship during the 5-year / 100,000-mile period following such vehicle delivery to consumer.

13. On May 10, 2025, and following the execution of the Vehicle purchase documents, Plaintiff took delivery of the Vehicle, at which time it showed only 9 delivery miles.

14. Since the time of Vehicle delivery to the present, the Vehicle has suffered from a defect in the engine's crankshaft thrust bearing, which permitted excessive crankshaft end play, drove metal debris through the engine and its oil passages, and ultimately required full engine replacement under warranty.

15. On June 2, 2026, at approximately 21,245 miles, Plaintiff delivered the Vehicle to Reliable Chevrolet and complained that the Vehicle made a grinding or ticking noise when he applied the accelerator, that the noise appeared to come from the transmission or transfer case area, and that the noise could be heard both on take-off and when the engine was revved in park. No warning lamps were illuminated at that time.

16. Reliable Chevrolet identified the concern as the condition described in Defendant's Service Bulletin No. 25-NA-307, "Information on Engine Noise from Bell Housing Area, Malfunction Indicator Lamp (MIL) Illuminated - DTC P06DD and/or P06DA-92 Set."

17. Reliable Chevrolet's technician verified Plaintiff's concern of a tapping sound while pressing the accelerator pedal and located the noise as coming from the engine block.

18. Reliable Chevrolet's technician then measured the Vehicle's crankshaft end play as directed by Service Bulletin No. 25-NA-307 and found it to be 0.19 inch, against Defendant's specification of 0.0033 to 0.0124 inch - more than fifteen times the maximum end play that Defendant's own specification allows.

19. Reliable Chevrolet's technician recorded that the Vehicle had suffered a thrust bearing failure, that the bearing had been too tight and had worn prematurely, and that the failure had sent metal debris through the engine and its oil passages.

20. Reliable Chevrolet accordingly replaced the Vehicle's engine. In the course of that repair it also replaced the Vehicle's turbocharger and oil lines, replaced all of the engine's seals and one-time-use components, torqued all fasteners to Defendant's specification, and programmed new injector codes into the Vehicle's engine control module.

21. Also during the same visit, Reliable Chevrolet investigated a further noise that it pinpointed to the area of the Vehicle's front axle actuator. After taking and examining a fluid sample from the front differential, Reliable Chevrolet replaced the Vehicle's front differential actuator.

22. Defendant paid for each of the repairs described above as warranty work, at no charge to Plaintiff, which is Defendant's own determination that the Vehicle's engine failure and the other conditions repaired at that visit were covered by Defendant's warranty.

23. During this repair, the Vehicle was out of service for at least ninety (90) days, and was not ready for pick up until August 31, 2026.

24. By a letter dated July 23, 2026 - sent while the Vehicle was still out of service at Reliable Chevrolet - Plaintiff, through his counsel, sent a letter to Defendant advising it that his Vehicle suffered from the aforementioned defects and that Defendant failed to repair these defects within a reasonable time under Defendant's warranty, and demanded relief.

25. In that letter, Plaintiff revoked acceptance of the Vehicle pursuant to U.C.C. § 2-608 and demanded the return of all money paid, and requested a final opportunity for Defendant to repair the Vehicle.

26. On or about August 5, 2026, Defendant acknowledged its receipt of Plaintiff's letter. Defendant did not request a final repair attempt, did not offer to replace the Vehicle or to refund its purchase price, and has made no good-faith response to Plaintiff's demand.

27. The Vehicle's engine failed on or about June 2, 2026, at approximately 21,245 miles and approximately twelve months after delivery, which is within the term of both Defendant's 3-year / 36,000-mile New Vehicle Limited Warranty and Defendant's 5-year / 100,000-mile powertrain warranty.

28. The crankshaft thrust bearing defect poses an unreasonable risk to the safety of Plaintiff and of the motoring public. A crankshaft that moves beyond Defendant's specification destroys the engine's bearing surfaces and its oil pressure, and an engine so damaged may lose power or stop operating without warning while the vehicle is being driven, increasing the risk of a crash.

29. The crankshaft thrust bearing defect, and Defendant's failure to remedy it, have materially diminished the value of the Vehicle.

30. Had Plaintiff known, prior to the time of purchase, that the Vehicle's engine suffered from the crankshaft thrust bearing defect described above, Plaintiff would not have purchased the Vehicle, or would have paid substantially less for it.

31. The defects experienced by Plaintiff substantially impair the use, value, and safety of the Vehicle.

32. Plaintiff provided the Defendant, or one or more of its authorized or franchised dealers, with reasonable opportunity to repair the problems with the Vehicle.

33. The Defendant has neglected, failed, or otherwise been unable to repair the substantial impairments to the Vehicle within a reasonable amount of time.

## FIRST CAUSE OF ACTION
### Breach of Warranty Pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. §2301, *et seq.*

34. The Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

35. The Plaintiff is a "consumer" as defined in 15 U.S.C. § 2301(3).

36. Defendant is a "supplier" and "warrantor" as defined in 15 U.S.C. § 2301(4) and (5).

37. The subject vehicle is a "consumer product" as defined in 15 U.S.C. § 2301(1).

38. 15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

39. 15 U.S.C. § 2304(a)(1) requires Defendant, as warrantor, to remedy any defect, malfunction or nonconformance of the subject vehicle within a reasonable time and without charge to the Plaintiff.

40. Defendant has failed to remedy the subject vehicle's defects within a reasonable time, thereby breaching the written and implied warranties applicable to the subject vehicle.

41. As a result of Defendant's breaches of written and implied warranties, and Defendant's failure to remedy the same within a reasonable time, Plaintiff has suffered damages.

**SECOND CAUSE OF ACTION**
**Breach of Implied Warranty of Merchantability Pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. §2301, *et seq.* and N.M. Stat. Ann. § 55-2-314**

42. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

43. Defendant is a merchant with respect to motor vehicles.

44. The Vehicle was subject to the implied warranty of merchantability, as defined in N.M. Stat. Ann. § 55-2-314, running from the Defendant to the Plaintiff.

45. An implied warranty that the subject vehicle was merchantable arose by operation of law as part of the purchase of the subject vehicle.

46. Defendant breached the implied warranty of merchantability in that the subject vehicle was not in merchantable condition when Plaintiff purchased it, or at any time thereafter, and the subject vehicle is unfit for the ordinary purposes for which such vehicles are used.

47. Plaintiff notified Defendant of the defect in the subject vehicle within a reasonable time after Plaintiff discovered it.

48. As a result of Defendant's breach of the implied warranty of merchantability, Plaintiff has suffered damages, including but not limited to incidental and consequential damages.

**THIRD CAUSE OF ACTION**
**Breach of Express Warranty, N.M. Stat. Ann. § 55-2-313**

49. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

50. In connection with the sale of the subject vehicle to the Plaintiff, Defendant provided Plaintiff with a New Vehicle Limited Warranty, under which it agreed to repair original components found to be defective in material or workmanship under normal use and maintenance, including the engine and its components.

51. Plaintiff relied on Defendant's warranty when he agreed to purchase the subject vehicle and Defendant's warranty was part of the basis of the bargain.

52. Plaintiff submitted his vehicle for warranty repairs as referenced herein. Defendant failed to comply with the terms of the express written warranty provided to Plaintiff, by failing to repair the defects under the Vehicle's warranty as described herein within a reasonable period of time.

53. Plaintiff has given Defendant reasonable opportunities to cure said defects, but Defendant has been unable and/or has refused to do so within a reasonable time.

54. As a result of said nonconformities, Plaintiff cannot reasonably rely on the subject vehicle for the ordinary purpose of safe, comfortable, and efficient transportation.

55. The Plaintiff could not reasonably have discovered said nonconformities with the subject vehicle prior to Plaintiff's acceptance of the subject vehicle.

56. The Plaintiff would not have purchased the subject vehicle, or would have paid less for the subject vehicle, had he known, prior to the time of purchase, that the subject vehicle contained these defects.

57. As a direct and proximate result of the willful failure of Defendant to comply with its obligations under the express warranty, Plaintiff has suffered actual and consequential damages. Such damages include, but are not limited to, the loss of the use and enjoyment of his

vehicle, and a diminution in the value of the subject vehicle containing the defects identified herein.

**<u>FOURTH CAUSE OF ACTION</u>**
**Revocation of Acceptance, N.M. Stat. Ann. § 55-2-608**

58. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

59. Plaintiff reasonably assumed, and Defendant represented, that all of the aforesaid defects would be cured within a reasonable time.

60. After numerous opportunities by Defendant to cure, it has become apparent that said defects cannot be seasonably cured.

61. The defects substantially impair the value of the Vehicle to the Plaintiff.

62. Plaintiff hereby notifies Defendant of said defects and of Plaintiff's intent to revoke acceptance and demanded return of the purchase price of said Vehicle.

63. Defendant has nevertheless failed to make a good-faith response to this demand.

64. As a result of Defendant's conduct, the Plaintiff has been damaged.

**<u>FIFTH CAUSE OF ACTION</u>**
**New Mexico Unfair Practices Act, N.M. Stat. Ann. §§ 57-12-1, *et seq.***

65. The Plaintiff incorporates by reference all allegations contained in this Complaint as though fully stated herein.

66. At all relevant times, Defendant engaged in "trade" or "commerce" within the State of New Mexico, including the advertising, offering for sale, distribution, and servicing of motor vehicles, as defined by N.M. Stat. Ann. § 57-12-2.

67. The New Mexico Unfair Practices Act ("UPA"), N.M. Stat. Ann. § 57-12-3, prohibits unfair or deceptive trade practices and unconscionable trade practices in the conduct of any trade or commerce.

68. Defendant engaged in unfair and deceptive trade practices by knowingly failing to disclose, and actively concealing, a material defect in the Vehicle's engine resulting in premature failure of the engine's crankshaft thrust bearing, excessive crankshaft end play, and catastrophic engine failure. This defect poses an unreasonable safety risk, exposes consumers to significant repair costs, and materially diminishes the vehicle's value.

69. Defendant further misrepresented the subject vehicle as reliable, safe, and of high quality, despite its knowledge of the defect.

70. Defendant's omissions and misrepresentations were material. A reasonable consumer would consider the existence of such a defect important in deciding whether to purchase the vehicle and at what price.

71. Defendant's conduct constitutes unfair or deceptive trade practices in violation of N.M. Stat. Ann. § 57-12-3, including, but not limited to:

a. Representing that the vehicle has characteristics, uses, benefits, or qualities that it does not have, in violation of N.M. Stat. Ann. § 57-12-2(D);

b. Representing that the vehicle is of a particular standard or quality when it is of another, in violation of N.M. Stat. Ann. § 57-12-2(D); and

c. Using deceptive representations in connection with the sale of goods, in violation of N.M. Stat. Ann. § 57-12-2(D).

72. Defendant's deceptive conduct was knowing and willful. Defendant was aware of the defect through pre-sale testing, internal analyses, consumer complaints, warranty data, and repair records, yet continued to market and sell the vehicles without disclosure.

73. As a direct and proximate result of Defendant's unfair and deceptive trade practices, Plaintiff suffered actual damages, including but not limited to diminished vehicle value, out-of-pocket repair expenses, loss of use, and other economic damages.

74. Plaintiff would not have purchased the vehicle, or would have paid substantially less for it, had Defendant disclosed the defect.

75. Pursuant to N.M. Stat. Ann. § 57-12-10, Plaintiff is entitled to recover actual damages. Defendant's conduct was willful and knowing, warranting the imposition of up to three times actual damages (treble damages), plus reasonable attorneys' fees and costs.

## SIXTH CAUSE OF ACTION
**New Mexico Motor Vehicle Quality Assurance Act,**
**N.M. Stat. Ann. §§ 57-16A-1, *et seq.***

76. The Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

77. Plaintiff is a "consumer" as defined in N.M. Stat. Ann. § 57-16A-2(C), in that he purchased the Vehicle other than for purposes of resale and the Vehicle is normally used for personal, family, or household purposes.

78. Defendant is a "manufacturer" as defined in N.M. Stat. Ann. § 57-16A-2(E), in that it is engaged in the business of manufacturing, assembling, importing, or distributing motor vehicles as a regular business.

79. The Vehicle is a "motor vehicle" as defined in N.M. Stat. Ann. § 57-16A-2(F), in that it is a pickup truck normally used for personal, family, or household purposes, was sold in the State of New Mexico and is registered in the State of New Mexico, and has a declared gross vehicle weight of 7,200 pounds, which is less than ten thousand pounds.

80. Defendant's New Vehicle Limited Warranty and powertrain warranty described above are each an "express warranty" as defined in N.M. Stat. Ann. § 57-16A-2(D), in that each

is a written affirmation of fact or promise made by Defendant to Plaintiff in connection with the sale of the Vehicle, affirming the material or workmanship of the Vehicle over a specified period of time.

81. The Vehicle did not conform to Defendant's express warranties. The Vehicle's engine suffered a failure of its crankshaft thrust bearing, which permitted crankshaft end play more than fifteen times the maximum that Defendant's own specification allows and drove metal debris through the engine and its oil passages, and which required the replacement of the Vehicle's engine, turbocharger and oil lines.

82. Plaintiff reported the nonconformity to Defendant's authorized dealer, Reliable Chevrolet, on June 2, 2026, during the term of Defendant's express warranties, as provided in N.M. Stat. Ann. § 57-16A-3(A).

83. Defendant, through its authorized dealer, was unable to conform the Vehicle to its express warranties after a reasonable number of attempts.

84. Pursuant to N.M. Stat. Ann. § 57-16A-3(C), it is presumed that a reasonable number of attempts have been undertaken to conform a motor vehicle to its applicable express warranties where the vehicle is out of service by reason of repair for a cumulative total of thirty or more business days, exclusive of down time for routine maintenance.

85. The Vehicle was out of service by reason of repair from June 2, 2026, through August 31, 2026 - at least ninety (90) calendar days and more than sixty (60) business days, exclusive of any downtime for routine maintenance. The statutory presumption of N.M. Stat. Ann. § 57-16A-3(C) therefore applies.

86. Plaintiff further provided Defendant with direct written notification of the nonconformity and an opportunity to cure it, as N.M. Stat. Ann. § 57-16A-3(C) requires, by the

letter of July 23, 2026, described above, which requested a final opportunity for Defendant to repair the Vehicle.

87. Defendant acknowledged its receipt of that notification on or about August 5, 2026 and did not request or undertake a final repair attempt.

88. The nonconformity substantially impairs the use and market value of the Vehicle to Plaintiff.

89. Plaintiff has submitted his claim to Defendant's informal dispute settlement procedure, BBB AUTO LINE, and that proceeding remains pending.

90. Notwithstanding the foregoing, Defendant has failed and refused either to replace the Vehicle with a comparable motor vehicle or to accept return of the Vehicle and refund to Plaintiff the full purchase price of the Vehicle, including all collateral charges, less a reasonable allowance for Plaintiff's use of the Vehicle, as N.M. Stat. Ann. § 57-16A-3(B) requires.

91. As a direct and proximate result of Defendant's violations of the New Mexico Motor Vehicle Quality Assurance Act, Plaintiff has suffered damages, and Plaintiff is entitled to replacement of the Vehicle with a comparable motor vehicle or to a refund of the full purchase price of the Vehicle and all collateral charges, less a reasonable allowance for use, together with reasonable attorney fees and court costs pursuant to N.M. Stat. Ann. § 57-16A-9.

**DEMAND FOR RELIEF**

WHEREFORE, the Plaintiff demands judgment against Defendant as follows:

a. An order approving revocation of acceptance of the subject vehicle;

b. Money damages, in the form of a refund of the full contract price, including trade-in allowance, taxes, fees, insurance premiums, interest, and costs, and a refund of all payments made by Plaintiff on the subject contract;

c. Incidental and consequential damages;

d. Punitive damages;

e. Reasonable attorney's fees;

f. Such other and further relief as this Court deems just and proper.

**TRIAL BY JURY DEMANDED ON ALL COUNTS**

Dated: October 23, 2026

BRIAN BOGLE, Plaintiff

By: /s/ Sergei Lemberg
Sergei Lemberg, Esq.
LEMBERG LAW, L.L.C.
43 Danbury Road
Wilton, CT 06897
Telephone: (203) 653-2250
Facsimile: (203) 653-3424
*Attorneys for Plaintiff*